The next case, number 24-1855 and number 24-1856, B.I. 40 LLC v. Ironshore Specialty Insurance Company. At this time, would counsel for the Ironshore Appellant Cross Appellee please introduce himself on the record to begin. Good morning. My name is Ronald Schiller. I represent Ironshore Specialty Insurance. With permission of the panel, I would appreciate two minutes of rebuttal time. Yes. We're here after dueling motions for summary judgment were filed before Judge Saris. This was an agreed procedure where both sides agreed to submit the matter to the district court on motions that they said would resolve all issues, with the exception of, in addition, Ironshore had other issues that if it did not win on the issues, but before the judge might require later for indemnity discovery. But as to the duty to defend, both parties agreed, Your Honors, that the issue was right to go on early motions for summary judgment. And I raise that for reasons I'm going to get to in a little bit, because part of the briefing from the cross appellant, B.I. 40, which is a lender, to be clear. It's not a landlord. It's not an owner. It lent bridge funds of $6.8 million to the prior operators of the Woodhaven home, also known as Tewksbury. Part of what they seem to argue is now that certain inferences should be drawn their way, or that there are fact issues that compel this court, an appellate court, to disregard Judge Saras' decision in favor of Ironshore on certain of the issues and rule their way. In fact, of course, as a moving party and as a party that told the court to decide things on summary judgment, it is not up to this court or Judge Saras, for that matter, to construe and make factual inferences one way or the other, and if there were fact issues. Okay. Why don't you get to the arguments on the issues that were reached? Okay. Thank you, Honor. This is a case where the policy that was issued was not issued, as your Honor knows, to B.I. 40. It was issued to Woodhaven. And then there were some additional insureds that were listed on the policy under Endorsement 3. The additional insured coverage is very narrow. The additional insured coverage is even narrower than the language in the policy. So this additional insured language is actually stated twice, except the endorsement narrows it even further. It says, it is understood and agreed that each additional insured is being afforded coverage under this policy for any liability incurred solely as a result of the acts, errors, or omissions of the original insured. No question that the original insured is Woodhaven or Tewksbury. It also goes on to say, no coverage will be available under this policy for any claim based on or arising out of an act or alleged independent or direct liability of any additional insured. Now, this is not uncommon language, and we've cited the case law to the Court, and I'm going to touch on it briefly, but it's been thoroughly briefed. This is very narrow additional insured coverage. If BI40 wanted to buy broader coverage, it could have, A, purchased it itself, or, B, negotiated to make sure that it had coverage that went beyond this additional insured coverage. The other thing Endorsement 3 says very clearly is, this very narrow additional insured coverage is only for the GL, or general liability part, of this policy. And as the Court knows, this policy had many parts. The first part was a professional liability part. The second part, B, was the general liability part. And then it had parts from point of liability and others. Well, this was about as narrow as one could get, but it's not uncommon. And, in fact, many of the cases that we cite involve construction contracts and other contracts from around the country were similar, but not identical. I'll get to that. Similar language has been held to mean the additional insured coverage for the precarious liability of Woodhaven, the Woodhaven in this situation. And that's so that if a plaintiff sues Woodhaven and BI40 and says that Woodhaven was acting for BI40, it gets a defense. And it might even get indemnity if it's ultimately held liable solely for precarious liability. Now, in this case, this is not in dispute. BI40 agreed that this coverage was for precarious liability. Judge Saris said the parties agreed that this coverage is for precarious liability. That's in her decision and that's never been disputed. In the appellate briefs in this case, BI40 agrees that it's solely for precarious liability. Now, why does that matter? Because notwithstanding that agreement in their appellate briefing, BI40 argues essentially for successor liability. It says essentially that we are... You know, why don't you turn directly to Judge Saris' reasoning? The duty to defend is usually an issue of law for the district court. I believe the district court said, look, there was a claim here of the additional insured being a landlord, and that was within the terms of the general liability policy. Okay. I'll address that specifically. Judge Saris went directly to count 12 of the Frost complaint. And to reset for the panel, there were two complaints. There's the Saley complaint, which was the purported class action in state court. And then there was the Frost complaint, which was the one filed by a resident's family in federal court. And what she addressed on the Frost complaint, Your Honor, which is what I think you're focusing on, is count 12 of the Frost complaint. And count 12 of the Frost complaint, she went through all of the complaints, every count, and she concluded that every count involved direct allegations against BI-40 to the extent that there were ever any claims against BI-40 that had allegations against it, except she concluded count 12. Because remember, the additional insured language only reaches it for vicarious liability. Count 12, Your Honor, just to clarify, didn't say you were a landlord in that count. What it said is that the Massachusetts statute that forbids a landlord from collecting an administrative fee applied and has been held to apply to a long-term care facility like this. And what Her Honor said is since BI-40 is alleged in the alternative in that count, it's one of two defendants, to have held the money, that that must be vicarious liability. And we had two responses for that. We briefed them on appeal. One is it's not vicarious liability. And Massachusetts law clearly defines vicarious liability. Vicarious liability is holding one responsible for another based on the relationship between two parties developed from the law of agency. It relates to a manifestation of consent by one person to another that the other shall act on his behalf. That's not vicarious liability, continuing to hold something. And what they, what BI-40 contends is, well, it's sort of like akin to trustee process defendant liability. They cite no case law for that, and I'm not even sure what that means, but that's not what Judge Saris said. Secondly, they say BI-40 admits that it's not seeking successor liability, and it couldn't because that wasn't fled. Nobody says BI-40 is the successor to Woodhaven. It was the lender. KCP advisory, which was appointed as the receiver, did operate Tewksbury or Woodhaven. Nobody says BI-40 is a successor. But again... Let me try to ask you this question in a different way, focusing in on the Frost action. So the Frost complaint does seem to allege a wrongful eviction, and the administrative fee count is part of that larger claim. So why would it be wrong to construe that claim as a alleging wrongful eviction rather than narrowly? I'm sort of wondering if you could address the lens, which we should look at that through. Every single additional act, I'm sorry, account, alleges direct conduct by BI-40. And this is not the typical, a lot of the cases cited by BI-40 stand for the proposition that the duty to defend is broader than the duty to indemnify, which we agree. And if there's a potential claim for one count, you defend them all, which we agree, but not that if each of the other... They don't address our language, the language that I read to you at the beginning that says if it's understood and agreed that each additional insured is being afforded coverage for any liability solely as a result of the acts, errors, and omissions of Woodhaven, and every single one of those counts, Your Honor, addresses direct conduct of BI-40 so that none of those counts involve, and none of them, by the way, also allege pure vicarious conduct. Whether using the word vicarious or other ones, none of them allege vicarious conduct because, after all, they can accuse anyone of wrongful eviction, but the conduct that they allege is as against BI-40 as an allegedly nefarious lender, but not as a landlord, and it's their conduct. So what she concluded, we believe rightly, is that every single one of those counts fell outside the narrow additional insured language here. This is not a general GL policy that says if you have one count or some language in another count, there's potentially coverage. With one point I want to point out, because it's not unfair. If there is coverage under Count 12 for wrongful eviction because of the administrative fee, then we don't get to pay for defense only for Count 12, and we didn't. Pursuant to that order, we ended up paying, and there's a bond that we posted, for the defense up until the time that that count was dismissed, which it was in August 2023. Ironically, why was it dismissed? Because BI-40 was not a landlord, and BI-40 convinced Judge Saris that it should never have been sued as a landlord, and that that count only supported a claim against it as a landlord. However, we agreed to pay, in order to appeal and have a judgment post a bond, the entire defense cost, not just for Count 12, but pursuant to Massachusetts law, we agreed to pay for the entire thing up until the date it was dismissed plus coverage counsel fees. I think you mentioned two arguments. Is your second argument the argument, and I'd like you to elaborate on that, that even if this is connecting the administrative fee as just vicarious, it doesn't fall within the insuring clause in the first instance? That's the second argument, yes, Your Honor, and the reason for that is where I started, which is the additional insured coverage is only for general liability, and I know this is only a mapmaker or a public lawyer could love this, but coverage A is professional liability, and that generally applies to claims by residents for bodily injury, and there are certain exceptions, except it's always tied to a resident bringing a claim, and coverage B, which is general liability, generally there's only one kind of coverage, and I think all parties agree to potentially reach this point, and that is the personal injury coverage, and this is the part that's a little confusing. Personal injury does not mean, of course, as the panel knows, personal injury lawyers add on a billboard, personal injury as defined in the policy means certain kind of offenses, and the only one that Judge Saras found, and I think BI40 agrees, that could possibly trigger coverage under coverage B is wrongful eviction, and what we say, Your Honors, is that even if you found that holding that administrative fee, and to be clear, the administrative fee we're talking about is $3,500 per resident, so we've added up to just over $100,000 total for all these residents, I think even less than that, but even if that's true, it has to be wrongful eviction for wrongful eviction to exist, it has to be an owner, landlord, or lessor, and Massachusetts law says, in the Gowling case, that it has to be a landlord, and that makes sense, and that was part of the basis for Judge Saras ultimately dismissing these claims against it. I will just add one thing, because we put the language in front of the panel. Our actual definition of personal injury offense that lists wrongful eviction says at the end, buyer on behalf of an owner, landlord, or lessor. Nobody ever contends that BI40 is any of those, and Your Honor, I mean I can do it on rebuttal, but there is a third issue too, and the third issue is just that. Let's do that on rebuttal. Okay, thank you. Thank you, Counsel. At this time would Counsel for Appellee Cross Appellant BI40 please introduce herself on the record to begin. Good morning. May it please the Court, this is Attorney Stephanie Parker representing BI40 LLC. So first of all, this Court should affirm the District Court's conclusion that Ironshore had a duty to defend the Frost action, and at the outset I want to emphasize that there are multiple avenues that the Court can take for reaching that same conclusion. In other words, there were multiple claims, four specifically, that actually triggered... Before you get to your alternatives, why don't you deal with the reasoning that the Court actually used? For the administrative fee count specifically, yep. So in terms of the administrative fee claim, which is count 12 of Frost's complaint, you can see from reading that count that it does not allege that BI40 did anything unlawful or wrong. And again, the additional insured provision here, what that is saying, if I paraphrase it essentially, will defend you if you are being sued for something somebody else did. So that's really the lens that when Ironshore received the Frost complaint, initially it was a 93A letter that they received first and then a complaint, but when they received those materials, what Ironshore was supposed to do was to go through count by count, and there were many counts in the Frost complaint. There were all kinds of positive action alleged. We've never argued that every single count in the Frost complaint triggers coverage, and we don't have to. Massachusetts law is very clear. It's never been argued to the contrary by Ironshore's counsel, so to the extent that they're arguing that now, I'm not sure where that comes from. But Massachusetts law is very clear that it's an in-for-one, in-for-all standard. So if you have 10 counts in a complaint, if you have 30, if just one of those counts triggers the duty to defend, the insurer is on the hook to defend the entire action. So why does count 12 trigger? Yes, so going back to count 12, again, that count said that the original landlord, and this is statutory claim, Woodhaven, and this was long before BI40 was on the scene. So BI40 really only came into the factual picture here for what's relevant when it initiated the receivership proceedings in the fall. But long prior to that, when Frost herself had started her residency, she was charged a fee by Woodhaven. Again, nothing to do with BI40. It's never been alleged that it had anything to do with BI40. She was charged a fee that Frost then later said was not permitted by statute. And so that is very clearly conduct that is only conduct of Woodhaven. BI40 had nothing to do with the charging of the fee, and it was never claimed that it did. And so as a result, what you have is BI40 being sued on a claim under a theory that it had possession of the fees later on, and it had possession of fees that Frost was saying somebody else was wrong to charge. So if you look at the statute itself, the wrongful conduct that gives you statutory liability is the act of charging the fee. The statute doesn't say anything about if you hold the fee passively, if it's in your bank account or something like that, that you are also liable. It's tied to the actual charging of the fee at the inception of the tenancy, and the statute lists certain fees that are permissible. So this is a classic situation where you have essentially vicarious liability. It doesn't use the word vicarious in the complaint, but I don't think anyone is arguing that you have to use magic words here. There is no allegation that BI40 itself did anything wrong with respect to the fee. In fact, BI40 didn't even succeed to the landlord's legal position. That was the receiver. So the receiver took over, and the receiver was in charge of the operations. BI40 was only ever alleged to be the source of funding for at least some of those operations. But this is not a situation like in Gowen, which is just a Superior Court case, but the case that Iron Shore relies on repeatedly. Gowen involved a much more clear situation where the second party was taking on directly the lease obligations that had originally existed. So BI40 did not do that. It was not alleged that it actually legally succeeded to the lease. The theory of liability here, in my view, was quite convoluted in the lower court in terms of what Frost alleged, and ultimately she did not prevail on that claim, and it was dismissed. But nevertheless, it doesn't matter how convoluted or unlikely it is for a plaintiff to prevail in terms of the underlying complaint. The standard is very friendly for insurance. All you need is the mere possibility that a claim is covered by the policy. That's it. Just a possibility of coverage. Here's the difficulty I'm having. It seems to me you've got to sail through two rather daunting perils here. If I understand this correctly, you have to establish that Count 12 is a claim that seeks to impose liability on B140 solely on a vicarious basis. Then you've also got to show that that claim is a personal liability claim under the insuring clause of the policy, because if it isn't, then you don't get any insurance anyhow. It's not clear to me how you both say that the holding onto the funds is an imposition of solely vicarious liability, but then you then say it fits under the personal liability clause of the policy. How does it fit? One thing I want to point out is we just have to show that it is possible to read Frost's complaint in the way that we allege. I don't think we need to show that it definitively absolutely has to be read that way. In terms of their argument about, which is the second prong Your Honor was referring to, about the general liability coverage is not triggered, we think given the low possibility standard here in the threshold, if you look at the Frost's third amended complaint, in paragraph 187 of her complaint, she specifically alleges that the administrative fee was supposed to be used for maintenance. Then it's alleged that the lack of maintenance is one of the issues that directly led to the construction eviction of the residence. Although it's not spelled out in beautiful detail in her complaint, how you link those all together, I think there's certainly enough to support Judge Sarris' conclusion that it's possible for the complaint to be alleging that the general liability coverage was not triggered. Except I saw that. But the complaint alleges that the wrongful eviction occurred after the insurance company, after B-140 took over. In other words, it took over the end of December, if I remember correctly. The pipes froze sometime in January and the pipes burst in January on B-140's watch. So I have some difficulty in saying how, well, it's solely vicarious because it's just the administrative fee. But to then get around the personal liability, to get within the personal liability clause, we're going to say, well, it really caused a wrongful eviction by collecting the fee. But the wrongful eviction took place after B-140 took over. How does that, so you still qualify as solely vicarious? Right. Well, a couple of things I want to raise about that. Number one, I don't think you can view the act of the eviction that finally happened in isolation because that's not how Frost alleged it. When you actually look at her 93A letter and her complaint, which was long and detailed, she said that this was the culmination, basically, of a long period of disrepair and ignoring the maintenance obligations of the facility, that the pipes were in bad condition. And this was, and that all let what predated But wait, that's not the argument that you used to establish that this was only vicarious liability. The argument you're pinning your hopes on is that it's only vicarious liability because all they're sued for is hanging on to this administrative fee. And my difficulty is, okay, if I were to agree with you on that, you're then going to take the hanging on to the administrative fee and show that it is within an insurance clause. And when you then drop that and start focusing on eviction that took place after B-140 took over, that's where you're losing me. Yeah, I mean, I understand that. I also want to point out that it's, and this was in a footnote in our brief, but it's my understanding of the policy that in terms of what triggers general liability coverage, the policy uses the word acclaim, and acclaim is defined as the written notice of, you know, that you might be charged with wrongdoing. It's not saying, so it's not my reading that for every single count of frost complaint, you need to show that every single count independently triggered general liability coverage. No, but no one's saying that. The question is, does count 12 trigger general liability coverage as you construe count 12 in order to make it solely vicarious? Right, and so my response, Your Honor, is that I'm saying I don't think Your Honors are actually required to find that count 12 itself triggered the general liability provision if on the whole, the complaint as a whole, the claim, the legally defined claim, if there are adequate allegations in there that allege personal injury, i.e. constructive or wrongful eviction. So now you're urging claim means the whole complaint as opposed to claim meaning the count. Only in that analysis, because then when you get to the actual triggering of the duty to defend, you can't take that position and be consistent with Massachusetts law that you're in for one, in for all. So I'm just talking about the very narrow, when you do the first inquiry, is the general liability policy triggered at all, that you can look more broadly at Frost's complaint when you look at how claim is defined under the policy. But then when you actually go through and say for each of these counts, is BI-40 acting as an additional insured, that's where you have to go count by count and say is it being sued vicariously for something somebody else did. But again, this is why I wanted to start with the proposition that there's four counts here. I mean, I understand that Judge Saris focused on the administrative fee count, I think, because it's the most obvious, honestly. But it is not correct to say that Judge Saris's opinion ruled out triggering of coverage for any other claim. She did not go through all the claims and say no, no, no, except for administrative fee. She just focused on the administrative fee and then stopped there. But there were three other claims that we briefed extensively before her, and those were all other tenancy-related claims. Those were the breach of the residency agreement, the implied warranty of habitability, and the breach of the quiet enjoyment provision. And those are all related to the tenancy aspect. And again, as Ironshore's counsel acknowledged on their argument, there is no allegation and no one contends that BI-40 was legally for the landlord. So when you see these counts where it's been sued for what are very much breaches of contractual obligations owed by a landlord, how is BI-40 part of that if not for a vicarious theory of liability that basically because of its financial relationship as a lender, and again, this is a bit of a convoluted theory of liability, but because of its financial relationship, it's somehow on the hook for the landlord's independent breaches of its duties to the residents, that that's not direct wrongdoing of BI-40 because BI-40 didn't have the duty that could be legally breached. So our argument was that all of these... We have a lot of First Circuit and case law interpreting the Massachusetts duty to defend that says when a landlord you look at the claim, you have to look at the entire complaint. It also, in a case no one cited to us, Scotdale Insurance Company v. Byrne, 9-1-3, F-3-2-2-1, 2019. We made it clear that you do not just focus on the single claim. You do not just look at the single count or counts of the complaint that are the basis for the potential liability claim. You have to look at it in the context of the entire complaint. I believe that was one of the arguments that your opponent made, and I think this Court has just rejected it. So this goes back to your argument about when you look at the claim, yes, you have to find some triggering claim, but you also are required to look at it in the context of the entire complaint, which does allege wrongful eviction over a series of times that are related to the misuse of the fees from the application. Right. I mean, I think what you have here, Your Honors, is a classic situation where you have a mix of claims that are covered and claims that are not covered. I mean, there's certainly allegations in there that B.I. 40 directly engaged in wrongdoing, but there's also allegations and claims where B.I. 40 was tacked on, essentially, to the complaint with somebody else that was obviously the real alleged wrongdoer, either Woodhaven or the receiver, who was the one actually operating the entity here. I mean, if you look back at the content of the receivership order itself, it's very, very clear that B.I. 40 did not have any operational responsibility here. It was purely just a financial arrangement. So, you know, that's why the in-for-one, in-for-all rule developed was where you have these mixed bag cases. It's not practical to parse it out. And so, you know, you have a group of claims that trigger coverage, and then you have coverage for everything. And we haven't had too much time, I think, on either side to address this, but obviously, you know, we've proskeyed on two issues. We've spent a lot of time talking about Frost, but there was also the Sally action, which the district court had said there was no duty to defend there. And, you know, we're contesting that because it was very clear that... And that involved, you know, opposing a motion for leave to amend to add B.I. 40 to the case. So it's a lot smaller universities. But very clear that the policy language itself encompasses, you know, being named... Sorry, encompasses a complaint against an insured before you're formally named in a lawsuit. You know, all you need is this written notice of an intention to sue you, and that was clearly satisfied here, and I, of course, certainly knew... Thank you, counsel. At this time, would counsel for the appellant, Cross Appellee, please reintroduce himself on the record? He has a two-minute rebuttal. Yes, Ron Schiller again for iInsure Specialty. I'll address Your Honor's point first, which is the other three counts, which are breach of contract, breach of implied warranty of habitability, and breach of the covenant of quiet enjoyment. They all go to wrongful eviction, and they all allege that B.I. 40 directly wrongfully evicted. And why is that important? Because of the narrow scope of the additional insured coverage here. None of them allege that it's solely responsible for Woodhaven's conduct, and therefore is liable. One of them says, the breach of contract count, defendants, which includes B.I. 40, have breached the agreement by allowing the facility to fall into disrepair, constructively evicting plaintiff under false pretenses without sufficient notice or her consent, lost her personal property, and repeatedly lied to and misled plaintiff and her daughter. The breach of implied warranty says that they were aware of unsafe condition, including broken pipes, and failed to take action. The breach of covenant of quiet enjoyment says they failed to provide heat and failed to address the water safety issues. And going to Judge Picciotta's point, this is narrow. This is not, is there an allegation against them for wrongful eviction? If the additional insured coverage reached just that, we wouldn't be having this discussion. It's because these counts allege, whether it was right or wrong, and ultimately Judge Saras concluded it was wrong, so we're talking about a duty to defend basis right now, whether or not this is solely as a result of Woodhaven's conduct, and it wasn't. So the reason that Judge Saras got the count 12 and not these is because each, if you do look at the whole complaint, each one of these counts allege that the I-40, whether it was right or not, and we agree, even if it was wrong, we had a duty to defend, except for the narrow scope of additional insured coverage. Each one of these counts allege that it did things, and as was said, the eviction occurred on its watch. And the only other thing I wanted to say that I ran out of time before on, I guess I'm running out of time now on, is the stretch from saying, wait a second, we have an account for administrative fee that ends with a demand for return of the fee. It doesn't say for personal injuries and lost valuables, which are what other counts say. It says we want our fees back, our $3,500 back. To say that the failure to return the fees led to a diminution of the value of the place that led to the broken pipes, that would make the scope of the additional insured unreasonable and inappropriate on a Massachusetts case. Thank you. Your time is up.